### No. 18.

1.  **Dedication of Use of Block for Court House.** — In the General Land Office is a map of the city of Austin, shown to have been there since 1840. On one of the blocks are the words "court house and jail." By act of Congress of the Republic, January 14, 1839, it was provided, that after the permanent location of the capital provided for by said act, the President should appoint an agent who should survey and plat the surveys, etc., and deposit maps thereof in certain offices; among other places, in the General Land Office. Said agent was authorized to designate eligible lots for "necessary public buildings." In 1846 Travis County took possession of said block and erected thereon a jail. In 1855 the county erected a court house and jail upon the block, which were used as such until 1876. *Held*, these facts showed a dedication of the use of said block to the county of Travis for the purpose of constructing and keeping on it the buildings designated, so long as the county might elect to occupy it for such purposes.

2.  **Public Park.**—The marking of a block "public park" would indicate a dedication to public use, and the public, as well as the purchasers of adjacent lots, would then have acquired rights beyond the power of the county or State to destroy or affect.

3.  **Dedication of Use, etc.**—The privilege proposed by the State and accepted by the county by the above facts was that the county might *use the land* as a site for its court house and jail as long as it should choose to do so. The rights acquired by others were subordinate to those of the county, and depended upon its action. When the specific uses were abandoned by the county there rested upon the State no obligation to devote the property to other uses never consented to by dedication or otherwise.

4.  **Abandonment.**—See facts held to show an abandonment by Travis County of the old court house and jail block, when the county, under lease from the State, had occupied another site for court house and jail, and had erected thereon expensive buildings upon lots better fitted for the convenience of the city and county.

5.  **Construction of Statutes—Repeal by Implication.**—The act of May 30, 1873, "An act to dedicate to the use of Travis County certain land in the city of Austin, on which to erect a court house and jail, and to enable said county to build the same," was supplied by the subsequent acts (of May 4, 1874, and of 1875), "An act to lease to the use of Travis County certain lands in the city of Austin, on which to erect a court house and jail, and to enable the county to build the same," and the Act of 1875, amendatory, and providing for the issuance of bonds, the levy and collection of taxes for payment thereof, etc. Said latter acts cover the subject of the first act, and are considered as repealing it.

6.  **Right of State to Sue.**—Upon the abandonment by the county of the use of the block or site for court house and jail, the fee having remained in the State, the State alone became entitled to the possession. No legislative act was necessary to authorize the institution of legal proceedings by the State for the recovery of the block so abandoned, against persons in possession and holding adversely to the State.

Eʀʀᴏʀ to Court of Civil Appeals for Third District, in case on appeal from Travis County. Tried below before Hon. Jᴀᴍᴇs H. Rᴏʙᴇʀᴛsᴏɴ.

The opinion contains a full statement of the case.

*C. A. Culberson*, Attorney-General; *A. S. Burleson*, District Attorney; and *W. J. J. Smith*, Assistant, for the State of Texas, appellant. — 1. No grant or dedication will be presumed against the State. No material fact upon which the grant or dedication depends will be presumed. The burden was on the county to prove a grant or dedication. Neither a grant nor dedication of the land to Travis County was shown. The title will be presumed to be in the State. Sedg. & Waite on Trial of Title, sec. 192, and cases cited; Day Company v. The State, 68 Texas, 539; The State v. Delesdenier, 7 Texas, 76; Heirs of David v. New Orleans, 16 La. Ann., 404; Hogue v. City of Albina, 20 Ore., 187; City of Pella v. Scholte, 24 Ia., 288; Wendell v. Jackson, 8 Wend., 183.

2. The special acts of May 4, 1874, and March 13, 1875, by implication repealed the special act of May 30, 1873. If not, the said act of May 30, 1873, has nevertheless expired by its own limitation, and never having been acted under by the county, is obsolete, inoperative, and by its terms void. Special Laws 1873, ch. 248; Special Laws 1874, ch. 49; Special Laws 1875, ch. 91; Sedg. on Con. of Stat., 104; Const. 1869, art. 10, sec. 6; Bacon v. Russell, 57 Texas, 415; Holmes v. Anderson, 59 Texas, 482; White v. Martin, 66 Texas, 342.

3. If there was any grant at all, it was a mere qualified easement; and if there was a limited easement to a particular use, upon permanent abandonment of the designated use, and misuse and misappropriation of the land by the county, the right of possession would revert to the State, which all the time held the fee. Washb. Ease. and Serv., 4 ed., 231, 232; Commonwealth v. Fisk, 8 Metc., 238; The State v. Trask, 6 Vt., 355; Plumb v. Grand Rapids, 81 Mich., 392; Wayne County v. Miller, 31 Mich., 447; Cincinnati v. White, 6 Pet., 431; Gilmore v. Hayworth, 26 Texas, 89.

4. The basis of a dedication to a particular use is estoppel in pais. If the Republic, as the original proprietor of the town site of Austin, acting by competent authority, made or adopted a map having the block of land designated thereon as " court house," " jail," intending to grant an easement to the county, and sold to private persons lots in the city, and the county improved the site for those purposes, the State would be estopped from reclaiming the block of land, unencumbered with the easement, as long as the county used it as a court house and jail site. But when the county, acting through its Commissioners Court, abandoned and relinquished its easement, and acquired and permanently improved a new court house and jail site, under a free lease of ninety-nine years from the State, the latter, as the successor of the Republic, is not estopped, as against the county, from retaking unencumbered dominion of the old abandoned site, because the State is entitled to every use of the lot not inconsistent with the designated easement. The easement having been extinguished and abandoned, the right of possession reverts to the State.

The State is not estopped in this suit as against the owners of any lots in the city of Austin; because, first, none of them are parties to this suit, and the county is not entitled to their defenses, if any they have; second, they purchased their lots with knowledge that only a qualified easement for court house and jail purposes upon the block in question was granted, and that the people of the county had a right and a continuing power to abandon and relinquish the same and change the location of the court house and jail whenever public convenience and interest might require it; and third, they have no vested right in the specified easement, or if so, they have waived and surrendered it by more than fifteen years acquiescence in its unavailability and abandonment.  Stevenson v. Chattanooga, 4 Am. and Eng. Corp. Cases, 503; Parisa v. Dallas, 18 S. W. Rep., 568; Ellsworth v. Lord, 40 Minn., 337; Wirt v. McEnnery, 6 Am. and Eng. Corp. Cases, 105; Hyde Park v. Borden, 94 Ill., 34; Washb. on Ease. and Serv., 4 ed., 244; Cincinnati v. Lessees of White, 6 Pet., 432; Godd. on Law of Ease., 460–462, 465; Wilder v. St. Paul, 12 Minn., 201; Lebanon v. Warren County, 9 Ohio, 80; Lamar County v. Clements, 49 Texas, 347; Gilder v. Brenham, 67 Texas, 345; Armstrong v. Dearbon County, 4 Blackf., 213.

*David H. Hewlett,* for appellee.—1.  The facts in evidence raise the presumption of a grant of the land in controversy by the Republic of Texas to the appellee.  Hobby's Land Law, sec. 1665, note; Lewis v. San Antonio, 7 Texas, 288; Taylor v. Watkins, 26 Texas, 688; New Orleans v. United States, 10 Pet., 662; Cincinnati v. White, 6 Pet., 438; Barclay v. Howell, 6 Pet., 498.

2.  If appellee's title to the land be less than an absolute grant, then it derives its title to the same through a legislative grant by way of dedication, and if not a legislative then a common law dedication of the same to a public use, such use being a perpetual one, i. e., for court house and jail.  Wislie v. Boute, 19 Ohio St., 238; Fulton v. Mehrenfeld, 8 Ohio St., 440; Williams v. The Presbyterians, 1 Ohio St., 478; 10 Pet., 431; 5 Wall., 290; 7 Wall., 272.

3.  The State having dedicated the land in controversy to a perpetual public use, she can not revert the title and reclaim possession for misuser or nonuser of the same.  She has no authority over the subject further than to protect the public rights secured by the grant.  Commonwealth v. Rush, 14 Pa. St., 186; Barclay v. Howell, 6 Pet., 488; 1 Ohio St., 478; United States v. New Orleans, 10 Pet., 451.

4.  In the absence of legislative expression or direction that the title to the land in controversy shall revert to and its possession be reclaimed by the State, no other or different agency of her sovereignty has the power to express the State's election upon the subject matter of such forfeiture. Rev. Stats., art. 2811a; Schulenberg v. Harriman, 21 Wall., 34.

5. The act of the Legislature empowering the county to sell and pass the title to the block of land in controversy, was a recognition of the title to the same for a public use in the county; and whether said act has expired of its own limitation, or never having been accepted or acted on by the county, has become obsolete and inoperative, does not affect the question of title of the county to the land involved.

### ON APPLICATION FOR WRIT OF ERROR.

*C. A. Culberson,* Attorney-General, and *Mann Trice,* Assistant Attorney-General. — The record shows, (1) a dedication limited to specific public uses and purposes, to-wit, court house and jail purposes; (2) an acceptance by defendant in error for such uses and purposes; (3) an abandonment and nonuser for the purposes for which the dedication was originally made.

It is well settled that upon such a statement of facts no title passes, but the usee is simply invested with the right to use the property for the purposes for which the dedication was made; and when such use ceases, all rights originally granted revert to the dedicator. 2 Dill. on Mun. Corp., 4 ed., sec. 633; Mills on Em. Dom., sec. 57; Elliott on Roads and Bridges, secs. 89, 670, et seq.; Lewis on Em. Dom., sec. 596; Ramthun v. Halfman, 58 Texas, 551; Mendez v. Dugart, 17 La. Ann., 171; Marginy v. Railway, 15 La. Ann., 427.

Wherefore it is respectfully submitted that the judgment of the court below should be in all things reversed, and judgment here rendered for plaintiff in error, as should have been in the first place.

HENRY, ASSOCIATE JUSTICE.—This case is before us on a writ of error to the Court of Civil Appeals of the Third Supreme Judicial District, sued out by the appellant.

The county of Travis brought suit in the District Court against L. M. Crooker, as surviving partner of Christian & Crooker, and Matilda Christian, as the surviving wife of the said Christian, to recover $1500, claimed to be due by contract for the rent of a certain block of land in the city of Austin.

The State of Texas intervened in the suit, by petition in the nature of an action of trespass to try title, alleging ownership of the land in controversy and praying for a judgment for its possession and for the recovery of $1500, as damages for its use and occupation.

The defendants consented to a judgment against them, in favor of the party found to be entitled, for $1500.

The case was tried by the judge without a jury, and a judgment was rendered in favor of the county against the State for the land, and against the defendants for the money.

Omitting legislative acts, the material facts found by the Court of Civil Appeals are substantially as follows:

When the city of Austin was originally divided into blocks and lots and platted, the block in controversy, and all other lots and blocks in said city, belonged to the Republic of Texas, and all of them not in some manner dedicated to public uses were subsequently sold by the Republic or the State.

As provided by the statute of the Republic, quoted below, the agent of the Republic designated upon the map of the city the lots and blocks reserved for public uses.

The original map of the city was made in 1840, and is now on file in the General Land Office of the State of Texas. Upon it the block now in controversy is designated as follows: On the north half thereof is written the words "court house," and on the south half the word "jail." Upon said map the block immediately north of said court house and jail block is designated by the words "public square." The said map was made by the agent of the Republic, and has remained on file since it was made as the official map of said city, and all lots and blocks were sold by the government by and according to said map.

In the year 1846 Travis County took possession of the block in controvesy and erected on it a wooden jail, which it used until 1853. at which time it was destroyed by fire. In 1855 the county erected on the north half of the block a rock and concrete house for a court house and jail, which is still standing, and was used for said purposes until 1876, when it was abandoned by the county, and it has not since that time been used as a court house or jail, but since 1877 said block has been rented by the county to Loomis & Christian, and their successors, the defendants Christian & Crooker, as a lumber yard.

In pursuance of the acts of the Legislature (herein after referred to), Travis County erected in 1875 and 1876 a court house and jail and jailor's residence, at a cost of about $220,000, on the north half of block number 123, in the city of Austin, which it has ever since occupied.

The present court house is distant about three-quarters of a mile from the old court house; is more conveniently situated for the inhabitants of the city, and its location is better suited, in every particular, for the uses intended than the old one is.

The present value of the old court house and jail is about $2500. The present population of Travis County is about 50,000; of the city of Austin 20,000.

The State's plea of intervention was filed in this cause on the 8th day of May, 1891, which was the first act upon the part of the State that called in question the title of the county or its right to hold and use the block in controversy.

The intervention of the State was by the Attorney-General, under the direction of the Governor.

A motion by the State for a rehearing, which was refused, presented the following grounds therefor, which are insisted upon in this court:·

"1. Because the court erred in holding that the title to the premises in question did not revert to the State on the abandonment and nonuser of the premises for the purposes for which the dedication was originally made.

"2. The court erred in holding that appellee acquired title to the premises in question by virtue of section 3 of special act of the Legislature of the 30th day of May, 1873."

An act of the Congress of the Republic, entitled "An act for the permanent location of the seat of government," approved January 14, 1839 (page 161, Special Laws, 1839), provided for the appointment of an agent by the President of the Republic, as soon as he should receive the report of the commissioners appointed to locate the capital, to survey, plat, and sell 640 acres of land out of the site chosen, and that "said agent shall cause to be made ten plats of said city, one of which shall be deposited with the President, one with the Commissioner of the General Land Office, one with the Texas Consul at New Orleans, one with the Texas Consul at Mobile, and the remainder of which shall be retained by the agent of said city."

The act further provided, "that the said agent, before the sale of said lots, shall set apart a sufficient number of the most eligible for a capitol, arsenal, magazine, university, academy, churches, common schools, hospital, penitentiary, and for all other necessary public buildings and purposes."

We are of the opinion that the copy of the plat found in the General Land Office, on which are written the words "court house" and "jail," and no other designation or number, on the block in controversy, considered in connection with the said statute and the other facts in evidence, is sufficient to show a dedication of the use of the block to the county of Travis for the purpose of constructing and keeping on it the buildings designated so long as the county might elect to occupy it for such purposes. The fee never passed out of the State.

It is contended by the appellee, that by the dedication public rights were acquired in the use of the land, which could not be impaired nor destroyed by the action of the county nor the authority of the State, and that it is only "when the use becomes impossible of execution that property dedicated to public uses, without any provision for forfeiture, reverts or the right to such use becomes extinct." 14 Pa. St., 186; Barclay v. Howell, 6 Pet., 498; 1 Ohio St., 478; New Orleans v. United States, 10 Pet., 662.

We think that the doctrine contended for is correct when applied to some dedications, but not to all, nor to the one now under consideration.

If the land had been dedicated unqualifiedly to public uses; if, for instance, the words "public park" had been written upon the plat instead of the words "court house" and "jail," we think that the public, as well as the purchasers of adjacent lots, would then have acquired rights in the property beyond the power either of the State or the county to divert or affect; and if in such case an attempt had been made to defeat or modify the enjoyment of such rights, then the remedy would have been to compel their observance by appropriate legal proceedings, which any owner of adjacent lots could have instituted. If the dedication had been of that character, it would have been available in this case by the county against the intervention of the State. The City of Cincinnati v. The Lessees of White, 6 Pet., 431; Warren v. The Mayor of Lyons City, 22 Iowa, 351; San Francisco v. Canavan, 42 Cal., 553; Am. and Eng. Encyc. of Law, title "Dedication."

Instead of being a general or unqualified dedication to the public, the only privilege granted was to use the land for a court house and jail. It must have been understood by purchasers of lots, and all others having an interest in the matter, that the county was not bound, and could not become bound, to permanently keep its court house or jail at that place. It had from the beginning the inalienable right to remove both from the land whenever its interest or convenience should lead it to do so. Whatever interest others had in the use of the property was acquired with the knowledge of this right and subject to its exercise. The State had the power to make an unqualified or unlimited dedication, and if it had done so it could not now defeat it; but instead of that, it limited its use to an expressed purpose.

The privilege proposed by the State, and accepted by the county, was that the county might use the land as a site for its court house and jail as long as it should choose to do so. The rights acquired by others in the use were subordinate to those of the county and depended upon its action.

The State had pledged the land only for specified uses, and when they were abandoned, there rested upon it no obligation to devote the property to purposes never consented to by it, by dedication nor otherwise, in favor of either the county or purchasers of lots. Lewis on Em. Dom., sec. 596; Washb. on Ease., 707; Ang. on Highways, sec. 326; 5 Am. and Eng., Encyc. of Law, 419; 55 Pa. St., 350; 44 Ohio St., 406; 36 Barb., 136; 52 Conn., 256.

We are aware that there are some expressions in the opinion of this court in the case of Lamar County v. Clements, 49 Texas, 347, that are not in harmony with the views here expressed, but they were not called for by the facts of the case, and hence are not conclusive of the question.

In that case the block was distinguished in the plat, by which other lots were sold, by the words "public square," and nothing else. The use was

unlimited, and it was decided, correctly, we think, that it could not be revoked nor changed.

We do not think that the county could lose the right to occupy and use the land except by an abandonment, intended to be permanent, of the specified uses.

There is no question about the act of abandonment. With regard to the intention, the question is, What was the intention of the county authorities at the time of the removal? and not what might be their action at some indefinite time in the future.

Upon this point the evidence shows, that the building on the lot had become unfit for the purposes for which it was designed, and that the location was not so desirable nor convenient as were some other points in the city of Austin. A committee had been appointed by the County Court to investigate and report with regard to another specified location, and also the terms upon which another lot could be purchased.

The lease from the State of the lot subsequently used for the period of ninety-nine years, and the substantial and costly improvements placed upon it, conclusively show that the purpose of the county was to abandon the old location for at least that length of time; and there is nothing to indicate that it had any intention of returning to it at the end of the lease, even if a purpose to be executed after such an interval could be treated as of any importance.

The permanent purpose of the county is not affected by the fact that the State had the power to cancel its lease and take possession of the new improvements by paying for them. Without regard to the improbability that the State would elect to recall the lease, at the expense of paying a large price for buildings probably in no respect adapted to its wants, the question of abandonment by the county does not depend upon the power nor the option of the State, but upon its own action and intentions. At most the reserved power of the State over the new location might affect the wisdom of abandonment, but it could not control either the fact or the permanency of the intention of the county.

An act of abandonment that would terminate the dedication and restore the land to the State as its owner, would not the less have that effect because it was done with the knowledge and consent of the State, when it was unaffected by any new contract or agreement.

But it is insisted, that the State, by the statutes enacted relating to the property, recognized and vested in the county an interest in the land, which continues and which can not be divested by or for the benefit of the State.

As shown by the conclusions of fact, there were three acts of the Legislature affecting the subject, passed respectively in the years 1873, 1874, and 1875.

The caption of the act of 1873 reads as follows: "An act to dedicate

to the use of Travis County certain land in the city of Austin on which to erect a court house and jail, and to enable said county to build the same." This act was passed on the 30th day of May, 1873.

Section 1 of the act dedicated to the county for sixty years block number 123 in the city of Austin, on which to erect a court house and jail of not less value than $90,000, and provided that the county should place at the disposal of the Legislature, free of charge, " all the rooms in the north half of the basement story of said court house, not less than five." It provided that specified lodges and encampments of the Masonic fraternity and the order of Odd Fellows should have the right to erect, free of charge, a third story on said building, with the right of free ingress and egress to the same. It also provided, that said buildings should be erected within five years from the passage of the act, or that the lease should become void; and that the lot should revert to the State in case the county should " fail to keep up and maintain a jail, cleanly and comfortable for prisoners, and adequately provided against the inclemency of the weather."

The second section authorized the levy of a tax, amounting to $15,000, for six years, to pay for erecting said " court house and jail," and the issuance of bonds " not to exceed $90,000, bearing interest at the rate of 8 per cent per annum, redeemable in annual installments from the proceeds of said tax; * * * provided, said bonds shall not be issued nor said taxes be levied unless a majority of all the registered voters in Travis County * * * shall vote in favor of said bonds and taxation."

The third and last section of said act (except the fourth, which relates to the time when it took effect) reads as follows:

" Section 3. Said County Court is further authorized and empowered to sell at public vendue or at private sale, to the best advantage, the buildings and land now occupied as a court house and jail in said city of Austin, and to make and execute a deed or deeds to the purchaser or purchasers of the same; said deed or deeds to be made and acknowledged by the presiding justice of said county of Travis. The amount of the proceeds of said sale to be appropriated to and expended in erecting said court house and jail herein provided for."

The caption of the Act of 1874, approved May 4, 1874, reads as follows: "An act to lease to the use of Travis County certain land in the city of Austin, on which to erect a court house and jail, and to enable said county to build the same."

This act has only one section, the contents of which are substantially as follows: It leases the north half of block 123 to the county of Travis for ninety-nine years, on which to erect a court house and jail of not less value than $90,000, within five years from the passage of the act, otherwise the lease to be void, and provides, that the county " shall be liable to suit, and all police laws and regulations, so far as paving sidewalks and

otherwise, so far as this property is concerned, in the same manner as citizens of Austin are," and that "should the State hereafter at any time desire so to do, it shall have the right to annul said lease by paying to said county the full value of all improvements on said lot."

The caption of the Act of 1875 refers alone to the Act of 1874, quotes its caption in full and literally, and expresses that the additional purpose of the act (of 1875) is to authorize the County Court of Travis County to issue and dispose of bonds of said county for the purpose of erecting a court house and jail, in accordance with the provisions of said Act of 1874, and to provide for the redemption of said bonds.

The body of the act refers to the Act of 1874, which it says the county can not comply with without the issuance of bonds. The remainder of the act relates exclusively to the issuance and payment of the bonds; that is to say, the first section provides, that the county may issue bonds, not exceeding $150,000, to be used exclusively for the construction of a court house and jail. The second section relates to the form and execution of the bonds, and the time and place of their payment. The third section relates to the manner of the levy and collection of a tax to pay the principal and interest of the bonds, and the creation and investment of a sinking fund. The remaining sections relate to the collection of the taxes, and to the compensation to be paid officers for that and for the sale of bonds.

The Act of 1873 is not, in any way, referred to in the other acts.

The Act of 1873 contains the following matters not included in either of the later acts:

1. A reservation in favor of the State of the right to use the basement of the new court house.

2. A reservation in favor of the Masonic and Odd Fellows fraternities of the right to erect and use a third story upon the new court house.

3. A provision that the leased land should revert to the State if the county should fail to keep the jail properly.

4. A provision requiring the question of the issuance of bonds to be submitted to a vote of the people.

5. The section authorizing the county to sell the block now in controversy and appropriate the proceeds.

The later acts provided for the State's taking possession of the property now occupied by paying for the improvements, and imposed upon the county the duty of paying the expense of paving the sidewalks adjacent to it.

Such provisions as were put both in the first act and in the latter acts were materially changed.

When their captions, form, and substance are considered, we think it is clear that the acts of 1874 and 1875 were intended to embrace the entire subject matter of legislation.

The facts, that the captions of the acts of 1873 and 1874 are precisely similar, except that in the latter one the word "lease" is used instead of the word "dedicate" in the former one; that the act of 1874 purports to be an original and not an amendatory law, and that it in material respects changes some of the terms of the first act, and adds others entirely new, indicate that it was intended as a substitute and not an amendment.

Increased weight is added to this conclusion when it is considered that the only particulars in which the act of 1874 was deficient, in the way of providing for the construction of the new public buildings by the county, existed in its omission to confer authority upon the county to issue and sell bonds and provide for their payment, without which it is not found to be practicable latterly to construct such improvements. To supply this oversight was the expressed occasion for enacting the law of 1875. This act was intended to be, as it was in form, amendatory, but it was in terms made to amend the act of 1874 and not that of 1873, notwithstanding its subject, the issuance of bonds, was embraced in the act of 1873 and not mentioned in that of 1874.

It seems to us that the Legislature clearly intended, by the statutes of 1874 and 1875, "to prescribe the only rule that should govern in the case provided for," and they must therefore be held to repeal the act of 1873. Sedg. on Const. of Stats., 104; Bryan v. Sundberg, 5 Texas, 418; Rogers v. Watrous, 8 Texas, 62.

It may be added, that the act of 1873 was in the nature of a proposition which could not take effect until accepted by the county, and the facts found do not evidence that it was ever accepted or acted upon.

The title to the land was in the State; the use to which it had appropriated it had been abandoned. The State alone had become entitled to its possession and use, and it did not require a special legislative act or declaration to authorize the institution of a suit by the State for its recovery. This suit was authorized by the Revised Statutes, article 2811a.

The judgments of the District Court and of the Court of Civil Appeals will be reversed and a judgment here rendered in favor of the intervenor against the county for the possession of the land in controversy, and against the defendants for the sum of $1500 for the rent or use of said land, and against the county and the defendants for all costs incurred in the District Court, and against the county for the costs of the Court of Civil Appeals and of this court.

*Reversed and rendered.*

Delivered April 3, 1893.

Motion for rehearing refused.