(86 Misc. Rep. 283)

SUFFOLK COUNTY v. EDWARDS et al.

(Supreme Court, Special Term, Suffolk County.   June 23, 1914.)

1. FISH (§ 7*)—SHELL FISH BEDS—REGULATION—STATUTES—DIRECTORY PROVISIONS.

Laws 1906, c. 640, requiring shell fish commissioners in Suffolk county to set off land determined to be natural shell fish beds within a specified time, in so far as it limits the time within which such work shall be done, is directory only.

[Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 9, 10, 15; Dec. Dig. § 7.*]

2. FISH (§ 7*)—SHELL FISH—OYSTER BEDS—CONVEYANCE—NATURAL SHELL FISH BEDS—REDETERMINATION BY COMMISSIONERS—CONVEYANCE OF LAND UNDER WATER.

Laws 1884, c. 385, granted all the state's right, title, and interest to lands under water in certain bays in Suffolk county to the county for oyster culture, to be managed and controlled by the county board of supervisors, providing for the appointment of commissioners of shell fisheries, who were given power to sell, in parcels not exceeding four acres, any of such land under water which was suitable for planting oysters, but no land on which the commissioners had determined there was a natural growth of clams of a specified quantity could be sold and conveyed for oyster culture.  By Laws 1906, c. 640, the act of 1884 was amended so as to prescribe detailed procedure to determine the character of the beds, including natural scallop beds, in the lands barred from sale, providing that no portion of the lands set apart as clam, shell, or scallop beds should be sold for oyster culture, except that 25 resident taxpayers of the county might petition the board of supervisors, setting forth that some portion of the land so set apart had for five years ceased to be a clam, shell, or scallop bed, whereupon redetermination of their character might be had.  Held that, after the act of 1906, lands set apart as clam, shell, or scallop beds could not be granted for oyster culture until a redetermination by the commissioners had established that they had ceased for five years to be natural shell fish beds; and hence a deed of such reserved lands, made within five years after the original determination, was void.

[Ed. Note.—For other cases, see Fish, Cent. Dig. §§ 9, 10, 15; Dec. Dig. § 7.*]

3. NAVIGABLE WATERS (§ 37*)—LAND UNDER WATER—GRANT—OYSTER CULTURE—STATUTES.

Laws 1884, c. 385, granting the people's right, title, and interest in lands under water in certain bays in Suffolk county to the county for oyster culture, to be managed by the county board of supervisors, if considered as a grant, should be construed strictly in favor of the state as for oyster culture alone; the state retaining full title and control of the lands for other purposes.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

4. NAVIGABLE WATERS (§ 37*)—LAND UNDER WATER—OWNERSHIP BY STATE—STATUTORY GRANT—EFFECT—MODIFICATION.

Since the state's title to land under water is sovereign, and not proprietary, Laws 1884, c. 385, granting the state's right to lands under water in certain bays in Suffolk county to the county for oyster culture, was a mere cession of the state's title held for governmental purposes, the county thereby acquiring title which was · still subject to the state's paramount right; and hence Laws 1906, c. 640, amending the act of 1884,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

imposing additional conditions on conveyances of such land by the county for oyster culture, and withdrawing land constituting natural scallop beds, except where found on redetermination not to have been such for five years, was not unconstitutional.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–226, 285; Dec. Dig. § 37.*]

Action by Suffolk County against Everett J. Edwards and others, individually and as Commissioners of Shell Fisheries of Suffolk County, and others. Judgment for plaintiff.

Timothy M. Griffing, of Riverhead, and Herbert L. Fordham, of New York City, for plaintiff.

Ackerly & Miles, of Northport, for defendants.

KELBY, J. Plaintiff seeks an adjudication that a deed of lands under the waters of Peconic Bay is null and void. This deed, which was executed by the commissioners of shell fisheries of the county of Suffolk to the defendant Wells, granted him the land for the purpose of oyster culture. It is plaintiff's contention that the commissioners in making the deed exceeded their authority.

It seems to be agreed that the lands under the waters of the "arms of the sea" (as it was called in the Andros patent), and which comprises Gardiner's Bay and Peconic Bay, are adapted to the purposes of oyster culture. This consists in taking the spawn or set of oysters from other places and planting them here for growth and development. There has always been a natural abundance of other shell fish, such as clams and scallops. By chapter 385 of the Laws of 1884, "all the right, title and interest which the people of the state of New York have in and to the lands under water of Gardiner's and Peconic Bays, in the county of Suffolk," was "ceded to said county for the purpose of oyster culture, to be managed and controlled by the board of supervisors thereof." This act provided for the appointment of commissioners of shell fisheries, who were given power to sell and convey, in parcels not exceeding four acres, any of such land under water which was "suitable for planting oysters thereon." But no land on which the commissioners had determined there was "a natural growth of clams, such that one person in a day could take three baskets, or a natural shell bed, from which shell can be taken in quantities for use in other places," could be sold and conveyed for oyster culture. In 1896, by further act of the Legislature, the amount of land which might be included in one sale was enlarged. In 1906, by chapter 640 of the Laws of that year, the act of 1884 was re-enacted in an amended form. More detailed procedure was prescribed to determine the character of the beds; but the principal amendment, so far as this action is concerned, was to add natural "scallop beds" to the natural clam or shell beds, which could not be sold or conveyed by the commissioners for oyster culture.

[1] It must be found as a fact in this action that the lands in question were properly determined to be "natural clam, shell or scallop beds." The officials, in setting off the land determined to be natural

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shell fish beds, including the lands in suit, followed substantially the procedure prescribed by the act of 1906. These steps were completed somewhere in 1910. While this was not within the limits of time stated in the act of 1906, the purpose of that act permits its time provisions to be regarded as directory merely, and not mandatory. Metcalf v. City of New York, 1 N. Y. Supp. 873,[1] and cases there cited.

[2] Thereafter the lands could not, under the act of 1906, be granted for oyster culture until by a redetermination of the commissioners it was established that they had ceased for five years to be natural shell fish beds. The deed which is attacked recites or shows on its face that it was given pursuant to the act of 1906. Not only was this deed made within five years after the original determination, but it was also made without any full or proper redetermination that the land had ceased to be natural scallop beds. The defendants, however, contend that the deed is valid under the act of 1884, in which there was no restriction against the conveyance of natural scallop beds, or any five years' limitation, as in the act of 1906, and they urge that the latter act—the one recited in their deed—is to be disregarded as unconstitutional. The argument of unconstitutionality rests upon an analogy asserted between the act of 1884 and a deed of conveyance between private parties, so that, as the argument proceeds, after the land had been ceded to the county by the act of 1884, the state no longer had power to impose the new or added restriction against the sale of scallop beds any more than an individual would after he had transferred his title. If the analogies to private grants are applicable at all, then the fact that the act of 1906 was passed at the request of the supervisors of the county would give it more the quality of a restriction by agreement than a restriction imposed.

[3] It is also to be observed that the act of 1884, if considered as a grant, is to be construed strictly in favor of the state, and that it was explicitly "for the purpose of oyster culture" alone. For all other purposes, such as those mentioned in the law of 1884, or that added by the law of 1906, the state retained full title.

[4] The fundamental fallacy, however, underlying the entire contention, is that it overlooks the clear distinction between grants of private properties for private purposes and cessions of public properties for governmental purposes. To these lands under water the right and title of the state was sovereign, and not proprietary. The state held the title of the people for the common benefit, and to promote the public convenience and enjoyment of the natural beds. Smith v. Levinus, 8 N. Y. 478. See, also, Coosaw Mining Co. v. South Carolina, 144 U. S. 550, at 564, 12 Sup. Ct. 689, 36 L. Ed. 537; Town of Brookhaven v. Smith, 188 N. Y. 74, 80 N. E. 665; Barnes v. Midland R. R. Terminal Co., 193 N. Y. 378, 85 N. E. 1093, 127 Am. St. Rep. 962; People v. Steeplechase Park Co., 82 Misc. Rep. 274, 143 N. Y. Supp. 503. All the state had to cede and all that the county took by the act of 1884 was the title held for governmental purposes. The county is but a subordinate governmental agency (Hughes v. County

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 49 Hun, 607.

of Monroe, 147 N. Y. 49, 41 N. E. 407, 39 L. R. A. 33; also see section 3, County Law), and as such took this title subject still to the paramount power of the state.

The addition, in 1906, of the words necessary to protect the natural scallop beds from being sold for oyster culture, was entirely within that power. The determination that these lands were natural clam, shell, or scallop beds never having been reversed or revised, there was no jurisdiction or power to sell for oyster culture. The deed is void. So, also, is the subsequent transfer of the land by Wells to Jennings. The land is free and open to scallop fishing.

Submit decision and judgment at Kings county courthouse by June 27, 1914.