C. A. Barbour et al. v. Mrs. Jane Y. McCallum, Secretary of State.

No. 5260.  Decided April 10, 1929.
(15 S. W., 2d Series, 1032.)

*Boyles, Brown & Scott,* for relators.

A reasonable length of time is such as may fairly and properly and reasonably be allowed or required, having regard to the nature of the act or duty and to the attending circumstances.  33 Cyc. 1567–1568, Note 48; Railway v. Roberts, 109 S. W., 982–983;

People v. Lawley, 119 Pac., 1089–1091–2. It has likewise been held that measures "are to be deemed reasonable where, although perhaps not the wisest and best that might be adopted, they are fit and appropriate to the end in view." 33 Cyc. 1562, citing State v. Vandersluis (Minn.) 6 L. R. A., 119.

Relators believe the court should likewise consider the vastness of the project undertaken by the lessee from the standpoint of the time required adequately to develop as contemplated by the lease, and of the cost and expense of development.

But aside from these considerations, relators believe that a term of ninety-nine (99) years must be considered a limited period of time, or a limited period within the meaning of the statute.

Ninety-nine (99) year leases are valid. State v. Administrators of Tulane, 125 La. 432, 51 So. 483 (cited in note, Annotated Cases 1914A 349). And except as otherwise provided by organic or statutory law, the term of a lease may be for any length of time that the parties elect. 35 Corpus Juris 973, Notes 19 and 20; 16 R. C. L. 608, Sec. 88.

*Claude Pollard,* Attorney-General, and *Allen Clark,* Assistant, for respondent.

Cited and discussed: Weekes v. City of Galveston, 51 S. W., 544; City of Oakland v. Laru Wharf & W. Co., 176 Pac., 361.

In briefing this case, we realize that we have been of slight assistance, if any, to the court in determining the questions involved. This is occasioned by two things; First: There is little or no law on the question, and Second: We are not at all satisfied that the Secretary of State is right in her contention.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

This is an original application for mandamus by relators to compel the Secretary of State to receive and file the charter of Barbour Terminals, Inc., to which the respondent answers admitting the truth of the facts alleged to show a right to such filing except in the particular pointed out by her for refusing to receive and file the charter, and that is, that the lease which constituted the paid-up capital stock of the proposed corporation was invalid because not authorized by the statute creating Harris County Houston Ship Channel Navigation District, Harris County, to which district the state granted the lands. The refusal of the Secretary of State was

based solely upon this ground so that it presents the only question for our determination, and that determination depends upon a construction of the Act of the 40th Legislature (p. 437) which granted to the Harris County Houston Ship Channel Navigation District, or its successors, certain lands, including those involved in this proceeding tributary to the Houston Ship Channel "for public purposes and for the development of commerce only, in accordance with the following provisions and stipulations herein contained; provided that inasmuch as it is the purpose of this Act to grant said lands to the public agency which is developing the Port of Houston, upon the creation by legislation of other public agency which shall supersede the said navigation district as the public agency developing the Port of Houston, the title of said lands shall be transferred from the navigation district to such public agency, either municipal or state, so provided, such public agency being referred to herein as the successors of the navigation district.

"Sec. 2. The navigation district, or its successors, is hereby granted the right, power and authority to authorize, establish, construct, purchase, own, maintain, equip, regulate, operate and lease wharves, piers, docks, dry docks, marine ways and all other structures and appliances for facilitating or accommodating commerce or navigation, and to dredge out channels, slips and turning basins, and to fill in space between the main land and islands and to fill areas for wharves, piers, docks, dry docks, marine ways and for all other structures and appliances for facilitating and accommodating commerce and navigation, having first secured a permit from the Government of the United States of America therefor, and to construct, or cause or authorize to be constructed on said wharves, piers, docks, dry docks, marine ways and other structures and appliances for facilitating and accommodating commerce and navigation, or on lands so filled in, any and all elevators, warehouses, bunkers, railway terminals and sidetracks, or any other facilities or aids whatsoever to navigation or commerce. Said lands shall be used by the navigation district, or its successors, solely for the establishment, improvement and conduct of an harbor and for the construction, maintenance and operation thereon of any facilities or aids whatsoever to the same, and said navigation district, or its successors, shall not at any time, grant, convey, give or alien said lands or any part thereof, to any individual, firm or corporation for any purpose whatsoever; provided, that the said navigation district, or its successors, may grant franchises thereon for limited periods of time for wharves,

and other public uses and purposes, and may lease said lands or any part thereof for limited periods for purposes consistent with this Act, but no wharves, piers or structures of any kind shall be constructed on said lands by anyone save the navigation district, except under a franchise granted by said navigation district and in a manner first prescribed by and approved of by said navigation district or its successors."

The proposed charter of Barbour Terminals, Inc., was presented under Article 1478 of the Revised Statute and was in full compliance with the requirements of the statute and its purpose is thoroughly consistent with the Act quoted above.

The lease owned by relators, in great detail, was made subject to the Act being considered but was for the term of 99 years, so that the precise question presented is whether or not the lease comes within the provision of the Act which declares that the grantee "may lease said lands, or any part thereof, for limited periods for purposes consistent with this Act." The clear purpose of the Act of the 40th Legislature was to vest these submerged lands, and others, in a public agency for public purposes and for the development of commerce only "for the establishment, improvement and conduct of an harbor and for the construction, maintenance and operation thereon of any facilities or aids whatsoever to the same." In addition to the general restriction upon the grant made plain in the express purposes thereof, it was specially restricted in the particular of making leases of said lands or any part thereof to purposes "consistent with this Act" and for "limited periods." Now we have seen the purposes of the lease are consistent with the Act and indeed are in furtherance of its aims. It remains only to be seen whether or not the lease for 99 years is for a "limited period." Restrictions in land grants are not favored. They will be respected where they are clearly indicated as the intention of the parties but where there is room for construction, that construction will be adopted which enlarges rather than restricts the grant. The permission of leases for limited periods in connection with the further provision that the navigation district or its successors "shall not at any time grant, convey, give or alien said lands or any part thereof to any individual, firm or corporation for any purpose whatsoever," evidences the purpose that the fee to the lands should never pass out of the agencies referred to as grantee and its successors in the Act. But these parts, and the Act as a whole, also as clearly evidence a power to lease the lands or any part thereof for the purposes stated for

"limited periods." Now 99 years is a limited period. It undoubtedly is not a grant or alienation of the lands nor is it a lease for an unlimited period,—if such a thing be legally possible. No other conclusion can be reached than that the Legislature intended the agency in whom the grant was vested to have a discretion to lease the lands or any part thereof for limited periods for any purpose not inconsistent with the Act. Necessarily in exercising that discretion as to the period of the lease, the character of the use and the extent of the improvements contemplated would enter into the consideration. What would be a reasonable period for one purpose or use might fall far short of being reasonable for another purpose or use. Thus a commercial lease upon a store building for three, five or ten years might be a reasonable period whereas 99 years would not be an unreasonable period for public improvements of the nature and extent shown to be contemplated in the development of the project in this instance. It involves dredging and structures requiring the expenditures of millions of dollars and contemplates the return of the properties and all improvements thereon at the termination of the lease. We think the lease is well within the terms of this statute,—that it violates neither the letter nor the spirit of the same.

We therefore recommend that the writ of mandamus do issue as prayed for by relators.

The opinion of the Commission of Appeals is adopted, and mandamus awarded.

*C. M. Cureton,* Chief Justice.