WEST TEXAS UTILITIES CO. v. LEE.
No. 7491.

Court of Civil Appeals of Texas. Austin.
March 19, 1930.
Rehearing Denied April 2, 1930.

Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Harris, Harris & Sedberry, of San Angelo, for appellee.

BLAIR, J.

By this suit appellee perpetually enjoined appellant from cutting any brush or timber from a certain tract of land. The suit arose out of the following facts: By deed dated October 10, 1894, Mrs. Mary E. Lee conveyed to Tom Green county about 20 acres of land out of survey No. 646, in the name of John Schafter, the granting clause reading as follows: "* * * Have bargained, sold and conveyed and by these presents do bargain, sell and convey unto the County of Tom Green and State of Texas for road and watering purposes, all of the following described tracts." And the habendum clause reading as follows: "To have and to hold all and singular the above described premises with all the rights and privileges and appurtenances thereto belonging unto the said County of Tom Green for the use only of the public as a public road and watering place."

This tract was in the shape of a dipper, the handle being represented by the roadway which crossed survey No. 646 about its center and led to a bridge across the Middle Concho river; and the bowl of the dipper being represented by the remainder of the 20 acres lying

along said river and adjacent to the bridge, and which contained a large portion of the 20 acres conveyed. A consideration of $300 was paid Mrs. Lee for this conveyance. Appellee became the owner of survey No. 646 under the will of the said Mrs. Mary E. Lee, his mother. In 1929, the state board of water engineers authorized appellant, a corporation, with power of eminent domain, to construct a dam at a designated point so as to create a reservoir or lake extending 3.2 miles up the Middle Concho river and 2.3 miles up the South Concho river, with an average depth of 6.2 feet, and to take therefrom sufficient water to supply the requirements of the city of San Angelo and other purposes. This reservoir or lake will inundate the bridge across the river, a part of the roadway, and practically all of the land forming the bowl of the dipper. Appellant and Tom Green county entered into an agreement whereby a new bridge was to be constructed upon the river some distance below the old bridge, and the roadway in the vicinity of the new bridge was shifted to cross the land represented by the bowl of the dipper at a different point from the old roadway and where a large dump was to be constructed so as to place the road above the waters of the lake, appellant bearing the larger portion of the cost of construction of the new bridge and new roadbed. After this change about 15 acres of the land represented by the bowl of the dipper was left, practically all of which will be inundated by the water of the reservoir or lake. Pursuant to the agreement with Tom Green county, appellant began to clear the brush and timber from this land, such being necessary to the project contemplated by appellant, both as a public health measure and to prevent damages to the dam being constructed from trees and brush, deadened by the water, washing against the dam. Appellee then brought this suit for a temporary injunction, which was granted and was made permanent upon a final hearing, perpetually restraining appellant from cutting any brush or timber from the 15 acres described in the petition, and being part of the land represented by the bowl of the dipper. The trial court found that the deed dated October 10, 1894, of Mrs. Mary E. Lee to Tom Green county, merely conveyed an easement in the land for the purposes of a public road and public watering place only, and that the fee to the land remained in Mrs. Lee and is now vested in appellee John P. Lee, subject to the said easement; that the contract and agreement of Tom Green county with appellant constituted an abandonment of that portion of the land here involved for the purposes for which it was conveyed; and that the action of appellant in cutting the brush and timber was taking the land without paying or securing payment in advance therefor as required by law.

This appeal presents three questions for our determination:

1. Did the deed from Mrs. Lee to Tom Green County convey the fee title or merely an easement in the land for public road and watering purposes?

2. Conceding that the deed conveyed only an easement, did the county have the right to contract with appellant to cut the brush and timber and to appropriate the land to the public use to which appellant proposed to put it?

3. Was appellee entitled to relief in equity by injunction, or was his remedy one in damages?

We have reached the conclusion that the deed conveyed only an easement in the land for public road and watering purposes. Before the execution of this deed Mrs. Lee had made a proposal to the commissioners' court of Tom Green county to deed a right of way for a first-class road across surveys Nos. 646, 644, and 647, in consideration of $300. Her proposition was accepted and the county surveyor ordered to make the field notes and deed to the land for roadway. The above deed was the result, which not only conveyed land for roadway purposes, but also conveyed the land for "watering purposes," or for a "watering place." The evidence is undisputed as to the meaning of the terms "watering purposes" or "watering place," as used in the deed. It was intended thereby to convey the land so that cattle might cross the river at this point on their way to market and where they might be held, watered, and rested on their way to the railway station at San Angelo for shipment. At the time of and after the execution of the deed the premises were often so used. But due to other railroads being built creating more convenient shipping points, the land is now seldom used for the watering purposes contemplated by the deed.

The language used in the deed is limiting and restrictive in its very nature, and shows the intention of the parties to be to restrict the title as well as the tenure of the use of the land. The purpose of the grant, as plainly stated in the granting clause, is for "road and water purposes," and in the habendum clause the title and tenure of use are limited and restricted "for the use *only* of the public as a public road and watering place." The terms "water purposes," or a "watering place," had a well known and defined meaning as above stated, which was known to the parties at the time of the execution of the deed. There is no inconsistency between the granting and the habendum clauses, but both state the same purposes for the conveyance. The word "only," when used in limitation in a deed, has a well-defined meaning to restrict or limit title or the tenure of the use to "one purpose," or to the purposes stated, or "exclusively" for

the purpose or purposes stated in the deed. 3 Words and Phrases, Second Series, p. 736; Webster's New International Dictionary. This construction of the language of the deed brings it clearly within that class of cases where it is held by the great weight of authority that a deed to a railroad for right of way purposes, or a deed to a county for public road purposes, only conveys an easement and not a fee, although the language employed may be capable of conveying the fee. Right of Way Oil Co. v. Oil Co., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Stevens v. Galveston, H. & S. A. Ry. Co. (Tex. Com. App.) 212 S. W. 639; 1 Thompson on Real Property, pp. 532–534, where the rule is stated that "a deed to a county, the habendum clause of which is 'To have and to hold said strip of land unto said party of the second part for the uses and purposes of a public highway or street,' conveys merely an easement of way and not the fee."

█ █ The deed in question should also be construed to convey an easement and not the fee, so as to give effect to the intention of the parties, which under all of the modern decisions must control. The intention of the parties to so limit and restrict the grant in question for "road and water purposes" becomes apparent from the fact that the road conveyed cut in two survey No. 646. Mrs. Lee only proposed to sell a roadway over three sections of her land for a consideration of $300. Nothing was said in the proposition with respect to a conveyance of any land for watering purposes. It is clear that Mrs. Lee, in recognition of a public need then existing for a place where cattle might be watered and held and rested for the market or shipment, conveyed a portion of the land lying along the river and adjacent to the road and bridge for that purpose. It is also clear that the conveyance was to the county in trust for the public "only," so long as it was used for watering purposes. No special benefit accrued to Mrs. Lee, or to her abutting lands, or to any assignee of Mrs. Lee, by virtue of the conveyance of the land for watering purposes. The record does not show any use to which Mrs. Lee put the land so conveyed different from that of the public generally, but appellee has leased the portion abutting the road and along the river to various lessees since he acquired title; lessees using the premises for gathering pecans and for the same general purposes that the public used it. The use of the land for "watering purposes," or for a "watering place," is peculiar to the particular facts and circumstances surrounding the land, and excludes the idea contended for by appellant that these terms merely declared the purpose for which the purchase was made, and therefore passed the fee title to the land and authorized the commissioners' court to handle or sell the land so long as the proceeds were used either for public watering or public road purposes. While the county may have had the capacity to acquire the property for watering purposes, it is unusual and rather tends to show that the land was conveyed for a particular use which must of necessity carry with it the implication of such limitation upon the estate conveyed. The conveyance for road and watering purposes is so interwoven as to be incapable of separation; that is, both parties have construed the instrument to convey the land for road purposes. This is evidenced by the fact that under the county's agreement with appellant the road has been shifted from one portion of the land representing the bowl of the dipper to another portion, and appellee has not sought to recover same by this suit from the county, and has acquiesced in that disposition of the land by the county. Nor has the appellee in this suit attacked the county's right to use any portion of the premises, but only seeks to enjoin the placing of the additional burden by appellant of destroying the timber upon the land. This brings the case clearly within the rule that a deed should be so interpreted as to give effect to the intention of the parties, and where the conveyance is made for a particular use it must of necessity carry the implication of such limitation upon the estate conveyed. Hill v. Ry., 32 Vt. 74; Lockwood v. Ry. (C. C. A.) 103 F. 243; Uhl v. Ry., 51 W. Va. 106, 41 S. E. 340.

█ Nor do we sustain appellant's second contention that if the deed only conveyed an easement, still the county had the right to contract with appellant to cut the brush and timber and to appropriate the land for the watering purposes to which appellant proposed to put it. This could not be done without placing an additional burden upon the land and defeating one of the specific purposes for which Mrs. Lee conveyed the land, to wit, a "public watering place." The evidence is undisputed that the inundation of the land would destroy it for the public watering purposes which the parties intended. Appellant's witness testified that appellant intended to fence the land so as to prevent its use as a public watering place, in order to avoid any pollution of the water. This clearly places an additional burden upon the land not contemplated by the parties to the deed, and destroys one of the specific purposes for which it was granted.

In the case of Fort Worth & R. G. Ry. Co. v. Jennings, 76 Tex. 373, 13 S. W. 270, 8 L. R. A. 180, it is held that a grant of right of way to one railway company did not authorize it to convey the unused portion to another railway company for the same purpose without the consent of the owner of the fee, thereby damaging the land, and without compensation for such damages. To the same effect is the holding in the case of McCammon & Lang

**460**

Lumber Co. v. Ry. Co., 104 Tex. 8, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870. And under these two authorities there can be no question but that the act of appellant in cutting the brush and timber preparatory to inundation of the land by its reservoir was a "taking" of the land without compensation being paid or secured to be paid as required by the Constitution, art. 1, § 17.

These two authorities, and many others also, hold contrary to appellant's third contention that appellee was not entitled to relief in equity by injunction, but that his remedy was one in damages. Appellant's acts in cutting the brush and timber preparatory to inundation of the land by the water of the reservoir constituted a "taking" of the land owned in fee by appellee subject to the public easement, as distinguished from mere damaging thereof, and may be restrained by injunction unless compensation is paid or secured to be paid in advance as required by law. Appellant has not condemned the land in suit, nor did it raise the issue of its right to do so and have same determined in this suit. See also City of Port Arthur v. Fant (Tex. Civ. App.) 193 S. W. 334, and the cases there cited.

In this connection there is no merit to the contention of appellant that appellee should not be heard to complain because he had stood silently by while appellant expended large sums of money in constructing its dam and the new roadbed. These matters are not involved, because the injunction merely restrains appellant from cutting brush and timber from appellee's land, and the trial court specifically provided that "this judgment is without prejudice to any right of the plaintiff (appellee), which may have heretofore existed, or may hereafter exist against the defendant (appellant), arising from any inundation or contemplated inundation of the lands in question, and without prejudice to any rights of eminent domain that the defendant may have."

We affirm the judgment of the trial court.

Affirmed.