## STATE OF TEXAS v. HARRIS COUNTY HOUSTON SHIP CHANNEL NAV. DIST.

### No. 11497.

Circuit Court of Appeals, Fifth Circuit.
Dec. 17, 1946.

Grover Sellers, Atty. Gen., of Texas, and Wm. J. Fanning and W. T. Curry, Assts. to Atty. Gen., of Texas, for appellant.

D. A. Simmons, Murray G. Smyth, and Fred Much, all of Houston, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

In a condemnation proceeding brought by the United States to take in fee simple absolute the title to 29.446 acres "the old

bed of Buffalo Bayou," a controversy and dispute arose between the defendants, Harris County Houston Ship Channel Navigation District, hereafter called "the District," Houston Deep Water Land Company, and the State of Texas over the title to it. A hearing date was set for the settlement of the controversy by adjudicating the title to the land, and the matter came on to be heard on a stipulation as to the facts, supplemented by the testimony of one witness.

The district judge, of the opinion that the Houston Deep Water Land Company owned no interest in the land in controversy, and that the Special Act of the Texas Legislature, Chapt. 292, Acts 40th Legislature of Texas, Regular Session, 1927, page 437, had granted to and vested in the District "an interest therein which entitled it to all the compensation due for the taking of the fee simple title" thereof, "save and except the interests expressly reserved to the State of Texas by Sections 5, 6 and 7 of the Act," gave judgment accordingly.

From the judgment that the Land Company had no title to it and that the District was entitled to receive all compensation awarded for the taking, except such as was awarded for the interest reserved to the State in Sections 5, 6 and 7, the State alone has appealed.

Assigning two errors,[1] the State of Texas is here insisting that the court (1) in not awarding it all the compensation, and (2), in the alternative, in not adjudging that the State of Texas was owner of the fee and entitled to all the compensation due for its taking, and the District, as owner of "the use of the property for the purpose of navigation and commerce," was entitled to the amount due for the taking of that use.

Since, as the opinion of the trial court and the briefs of both appellant and appellee make plain, the construction and effect to be given to the Act of 1927 is the determining point in the case, it is appropriate to set out in a note the portions of that act which are controlling here.[2]

---

[1] "1. The Court erred in not allowing and awarding the State of Texas all compensation due for the taking of the 'old bed of Buffalo Bayou.' "

"2. In the alternative, and if the appellant, the State of Texas, is mistaken in its first Point to be relied upon, the Court erred in not allowing the State of Texas all compensation due for the taking of the 'fee simple' title to the 'old bed of Buffalo Bayou,' except such compensation, if any, as may be due for the taking of the right of the Harris County Houston Ship Channel Navigation District to use the same for the purposes of navigation and commerce only."

[2] Section 1 of the Act provides: "That all right, title and interest of the State of Texas, to all lands hereinafter in this section described, to wit * * * and all the submerged lands lying and being situated under the waters of Buffalo Bayou * * * is hereby granted to the Harris County Houston Ship Channel Navigation District, or its successors, for public purposes and for the development of commerce only, in accordance with the following provisions and stipulations herein contained; * * *.

"Sec. 2. The navigation district, or its successors, is hereby granted the right, power and authority to authorize, establish, construct, purchase, own, maintain, equip, regulate, operate and lease wharves, piers, docks, dry docks, marine ways and all other structures and appliances for facilitating or accommodating commerce or navigation, and to dredge out channels, slips and turning basins, and to fill in space between the main land and islands and to fill areas for wharves, piers, docks, dry docks, marine ways and for all other structures and appliances for facilitating and accommodating commerce and navigation, having first secured a permit from the Government of the United States of America therefor, and to construct, or cause or authorize to be constructed on said wharves, piers, docks, dry docks, marine ways and other structures and appliances for facilitating and accommodating commerce and navigation, or on lands so filled in, any and all elevators, warehouses, bunkers, railway terminals and sidetracks, or any other facilities or aids whatsoever to navigation or commerce. Said lands shall be used by the navigation district, or its successors, solely for the establishment, improvement and conduct of an harbor and for the construction, maintenance and operation thereon of any facilities or aids whatsoever to the same, and said navigation district, or its successors, shall not at any time, grant, convey, give or alien said lands or any part thereof, to any individual, firm or corporation for any

The district judge thought, and in an unpublished opinion,[3] said, that, subject only to the limitations of Sections 5, 6 and 7, the Act had granted to the District the full absolute title to the property, and it was, therefore, entitled to the whole of the sums awarded for the taking, except the amount awarded for the taking of those reserved rights. He rejected the State's review that the limitation in the grant of the uses to be made of the land by the District had the effect, as contended by the State, of causing a reverter to the State when the property was condemned and

purpose whatsoever; provided, that said navigation district, or its successors, may grant franchises thereon for limited periods of time for wharves, and other public uses and purposes, and may lease said lands or any part thereof for limited periods for purposes consistent with this Act, but no wharves, piers or structures of any kind shall be constructed on said lands by anyone save the navigation district, except under a franchise granted by said navigation district and in a manner first prescribed by and approved of by said navigation district or its successors."

"Sec. 5. The State of Texas, may at any time, place the operation of said facilities under the supervision of the Railroad Commission of Texas, to insure reasonable wharfage and storage charges.

"Sec. 6. The right is hereby expressly reserved by the State of Texas to erect on the lands herein conveyed such wharves, piers and buildings for State purposes as may hereafter be authorized by law.

"Sec. 7. All mines and mineral rights, including oil and gas in and under said lands, together with the right to enter thereon for the purpose of development, and the granting of permits to excavate sand, shell or marl and to collect the tax on same, are hereby expressly reserved to the State of Texas; provided necessary or proper access to the lands hereby ceded, together with all improvements heretofore made, or to be made, under any mineral leases issued by the State in connection with mineral rights herein reserved are made a condition of this grant, and are covenants running with the ceded lands; provided further, that leases hereafter made by the State, or operations thereunder in connection with reserved mineral rights shall not interfere with the improvements made, or to be made in the development of the ship channel by the said navigation district, or franchise holders thereunder.

"Sec. 8. Nothing in this Act shall prohibit the Navigation District or its successors from granting to the United States of America such rights-of-way or easements as may be required by it for the construction of channels, basins, dumping grounds, or other allied purposes in connection with any work voluntarily undertaken by the Federal Government, or at the request of the navigation district or its successors."

[3] "The Navigation District is a political subdivision or arm of the State, created by Act of the Texas Legislature at the First Called Session of 1927, effective June 6, 1927 (Chapter 97, pages 256 to 259, H.B. 131), covering an area substantially the same as that covered by Harris County, with powers as set forth in such Act and given it by the General Laws of Texas with respect to Navigation Districts, etc. The District's rights to and interest in Parcel No. 1 at the time it was taken by the Government stems from an Act of the regular session of the 1927 Legislature of Texas (Chapter 292, page 437, S.B. 222) which Act (particularly Sections 1 to 7 thereof) it is necessary to construe."

"The Supreme Court of Texas in construing such Act in Barbour v. McCallum (118 Tex. 391, 15 S.W.2d 1032), did not find it necessary to name or define the particular kind of title which passed by the Act from the State of Texas to her political subdivision, the Navigation District, i.e., whether a qualified fee, charged with the uses set forth in the grant, with certain reservations, or whether, as the State contends here, only a dedication or use. Neither do I find it necessary to define the title or right passed. It is sufficient here to say that there has been no abandonment of Parcel No. 1 by the Navigation District, that the State has done nothing to cause title thereto to revert to her, and that neither the leasing of Parcel Post No. 1 by the Navigation District, the filling in of the bed of the Bayou thereof as stated, nor the taking of same by the Government for public use has affected the title, whatever it may be called, which the Navigation District took under such Act. It follows that the State is entitled to have herein only compensation for the interest reserved by her in Sections 5, 6 and 7 of the Act, the balance to go to the Navigation District. State of Texas v. Travis County, 85 Tex. 435, 443, 21 S.W. 1029, Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74, 75, and United States v. Certain Parcels of Land, D.C., 51 F.Supp. 811, upon which the State stands, are clearly distinguishable from the case we have here."

appropriated to uses other than those for which the grant was made, and that the whole award for the taking would, therefore, belong to the State. He also rejected its view that the limitations imposed upon the District's use of, and the prohibition against its selling, the granted property converted what would otherwise have been a grant of a fee simple title into the grant of an easement of use, leaving the fee simple title in the State.

■ Preliminary to joining issue on the merits, the District filed a motion to dismiss the appeal on the ground that the order was unappealable because not final. This court has recently in State of Texas v. Chuoke, 154 F.2d 1, decided otherwise. The motion to dismiss is denied.

On the merits, the State, citing many cases,[4] insists that though the act does declare that "all right, title and interest of the State of Texas is hereby granted," it qualifies this sweeping language with words of limitation so restricting the grant that it cannot be said to be a grant of a fee simple title but must be construed as a grant of an easement of user.

The appellee, on its part, defending the trial court's judgment, insists that no reasonable conclusion can be drawn from a reading of the whole act than the one the court drew. "It does," says appellee, "indeed contain safeguards against the District's making uses of the land contrary to the purposes for which the title was granted, and does prohibit its sale. But the purposes for which the title was granted are wide and comprehensive. The power of the District in respect to the uses of the property is very great, and, subject only to the prohibition against selling it and the limitations imposed in Section 5, 6 and 7, the District owns the land in full and complete title and not merely an easement over it." "In short," says appellee, "whatever technical name may be accorded to the interests granted to it by the State, the District's ownership included and embraced all the rights in the property which had any substantial value, and in determining that the District was the owner of all the rights which gave substantial value to the ownership of the property, and should be compensated for their taking, the district judge was right."

■ We reject outright the first contention of the State that the condemnation of the land worked an abandonment of the grant to the District and caused a reverter to the State with the result that the State became entitled to receive the compensation awarded for the whole bundle of rights inhering in the ownership of the land and taken in the condemnation. The district did nothing to abandon or forfeit its rights in the property. They continued to be owned by it until they were taken from it in the condemnation proceedings. In the course of those proceedings, there was no interim in time, no interval of space in which the reverter the State envisioned could take place. There is more of metaphysics than of sound common sense in the State's position, that because the taking by the Government was inconsistent with the purposes for which the grant was made to the District, the taking from the District of the rights the State had freely granted to it did not have the effects ordinarily attending a condemnation (1) of taking from the owner the continued enjoyment of the rights taken, and (2) of obligating the taker to pay the owner their value. To hold, as the State contends, that the taking did not have the normal effect of a condemnation, of acquiring from the District the rights the State had granted it but the abnormal one of extinguishing the District's rights to restore them to the State, and then take from the State the whole bundle of legal rights thus reunited in it, is to split legal hairs with a vengeance.

■ Upon the State's second point, we

4 Suffolk County v. Edwards, et al., 86 Misc. 283, 148 N.Y.S. 305; Parish of Jefferson v. Texas Co., et al., 192 La. 934, 189 So. 580, certiorari denied, 308 U.S. 601, 60 S.Ct. 138, 84 L.Ed. 503; United States v. State of Michigan, 190 U.S. 379, 23 S.Ct. 742, 47 L.Ed. 1103; Barbour v. McCallum, 118 Tex. 391, 15 S.W.2d 1032; West Texas Utilities Co. v. Lee, Tex.Civ.App., 26 S.W.2d 457; Dolan v. Walker, 121 Tex. 361, 49 S.W. 2d 695; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265.

agree with the district judge that it is not necessary to name or define the particular kind of title which passed by the Act to the District, that is whether the District had a qualified fee restricted by the reservations contained in the Act, or the State had the fee and the District had a servitude or easement of user. We cannot, however, agree with him that the interest owned by the District "entitled it to all the compensation due for the taking of the fee simple title thereto, save and except the interests expressly reserved to the State of Texas by Sections 5, 6 and 7 of the Act." We think that in so determining, the district judge overlooked a most important reservation from the grant to the District, the very significant limitation on the District's title that "it shall not at any time grant, convey, give or alien said lands or any part thereof to any individual, firm or corporation for any purpose whatever." In the condemnation in question here, the Government is not content with taking the rights granted to the District to use the land for the purposes named in the grant by letting it out on a very long term lease[5] or itself using it. It has sought to take, and has taken, from the State and District together the whole of the fee simple title to the land. One of the most important and distinctive elements of title to land is the right to sell and convey it. This right the State reserved out of the grant to the District and retained in itself. It is self-evident that the United States could not by condemnation take from the District an element of title which the District did not have. It is equally self-evident that the State, from which it took the right to sell and convey the land, and not the District, is entitled in the condemnation proceedings to receive the compensation awarded for the taking of this right.

 In apportioning between the District and the State, however, the compensation awarded in this case, it must be remembered that while, as between the condemner and the condemnee, the property is valued as a whole,[6] as between the owners, the distributive portion of the whole value is to be determined in the light of their respective situations as to each other actually obtaining when the taking occurs. Therefore, in apportioning to the District the value due for the bundle of granted rights, the fact that they are enjoyed subject to the reservations in favor of the State must be given its proper weight. In the same way, in valuing the State's bundle of reserved rights, the fact that they may not be enjoyed in a manner inconsistent with the grant as a whole must also be accorded due weight.

Except in denying the State compensation for the value of the right to sell, alien and convey the land, the judgment was right. It is reformed to accord the State the value of that right, and, as reformed, it is

Affirmed.

---

[5] Barbour v. McCallum, 118 Tex. 391, 15 S.W.2d 1032.

[6] "The deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking," United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 359, 89 L.Ed. 311, 156 A.L.R. 390; 11,000 Acres of Land v. United States, 5 Cir., 152 F.2d 566.