ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

November 10, 2004

Ms. Cynthia L. Reed                              Opinion No. GA-0270
Executive Director
Texas Building and Procurement Commission        Re: Whether the state owns Republic Square
Post Office Box 13047                            in the City of Austin, and if so, whether only the
Austin, Texas 78711                              legislature may act to convey a state interest in
                                                 the property  (RQ-0225-GA)

Dear Ms. Reed:

You ask two questions about Republic Square in the City of Austin. In particular, you wish to know whether the state owns Republic Square, and if so, whether only the legislature may act to convey a state interest in the property.[1]

I.      **Background**

Your questions arise because the United States General Services Administration (GSA) has asked the City of Austin and the State of Texas to abandon a section of a street that abuts Republic Square in connection with plans to construct a federal courthouse across the street in a block you refer to as Block 46. *See* Request Letter, *supra* note 1, at 1-2. You explain that in 1917, the legislature enacted a law ceding and granting Republic Square to the City of Austin "for a period of ninety-nine years" to operate the property for a municipal auditorium and market, "provided, however, that the state does not by this Act part with any title, color of title, or interest which it now owns in the property described in this bill, except as granted herein," Act approved May 17, 1917, 35th Leg., 1st C.S., ch. 11, § 2, 1917 Tex. Gen. Laws 13-14. *See* Request Letter *supra* note 1, at 1. In addition, you note that in 1948 the General Land Commissioner asked for an attorney general opinion regarding whether Republic Square "'belong[ed] to the Public School Fund'" and could "'be disposed of as Public School Land.'" Tex. Att'y Gen. Op. No. V-741 (1948) at 2 (quoting letter from Honorable Bascom Giles, Commissioner, General Land Office, to Honorable Price Daniel, Texas Attorney General). Attorney General Opinion V-741 concluded that Republic Square did not "belong to the Public School Fund" and that its disposal "is a matter wholly within the province of the Legislature," *id.* at 4. *See* Request Letter, *supra* note 1, at 1.

---

[1]Letter from Cynthia L. Reed, Executive Director, Texas Building and Procurement Commission, to Honorable Greg Abbott, Texas Attorney General (May 12, 2004) (on file with Opinion Committee, *also available at* www.oag.state.tx.us) [hereinafter Request Letter].

You also note that in 1929, the legislature relinquished the state's interest in City of Austin streets outside the Capitol grounds to abutting landowners:

> Subject to [certain reservations and easements], there shall be and is hereby relinquished to each owner of land abutting streets, alleys or highways in the City of Austin, Texas, the fee title to the center of the street, alley or highway upon which the particular land abuts, and for the distance along such street, alley or highway that the land abuts.

Act effective August 9, 1929, 41st Leg., 3d C.S., ch. 7, § 1, 1929 Tex. Gen. Laws 239.[2] In doing so, however, the legislature did not relinquish to landowners the public's easement in City of Austin streets for street purposes. *See id.* § 2 ("There is hereby perpetually reserved and retained an easement in, on and along all such streets, alleys and highways for street and highway purposes, and for such other public purposes as now exist . . . ."). Thus, as is generally the case, owners of land affected by this legislation own their land in fee simple to the center of the street, subject to certain public easements, including "the easement in favor of the public to a right of passage." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 31 (Tex. 2003) ("generally . . . unless otherwise provided in the grant or conveyance, the owner of land abutting a street, alley, or public highway owns the fee to the center of the road, subject only to the easement in favor of the public to a right of passage").

With respect to the GSA's plans to construct a federal courthouse across the street from Republic Square, you explain that federal guidelines "require building setbacks of 50 feet from streets for security reasons. Block 46 would be too small for a courthouse given the setbacks." Request Letter, *supra* note 1, at 2. If, however, the street between the proposed courthouse and Republic Square "is vacated[,] then the project becomes feasible. Republic Square and the vacated street area would be landscaped compatible with the federal courthouse." *Id.*[3] You state that "the City of Austin and the State of Texas must both enter into . . . an agreement" to vacate the street. *Id.*

## II.     Analysis

You first ask "whether any act of the Legislature, Attorney General Opinion, or transaction involving the State subsequent to [Attorney General Opinion V-741 in] 1948 effectively changed

---

[2]*See* Request Letter, *supra* note 1, at 2.

[3]State law limits governmental entities' authority to change the use of or to convey a public square or park. *See, e.g.*, TEX. LOC. GOV'T CODE ANN. § 253.001 (Vernon Supp. 2004-05); TEX. PARKS & WILD. CODE ANN. §§ 26.001-.004 (Vernon 2002); *see also Zachry v. City of San Antonio*, 305 S.W.2d 558, 560 (Tex. 1957) ("It is the general rule that where land has once been dedicated to public use, such as for park purposes, no use inconsistent with its use as a park can be made of the property so long as the public is still using the land as a park.") (citing *State v. Travis County*, 21 S.W. 1029 (Tex. 1893)). We gather from your letter, however, that neither the proposed agreement regarding the street nor the GSA's landscaping plans for the vacated street and Republic Square would interfere with Republic Square's current use as a public park.

the ownership status of" Republic Square. *Id.* at 1. We have not located any judicial or attorney general opinion or legislative action after 1948 addressing the ownership of Republic Square. However, City of Austin information suggests that since 1948 the city, county, and state have contested Republic Square's ownership. *See* http://www.ci.austin.tx.us/parks/republicsquare.htm ("Between 1950 and 1960 the park was converted to a parking lot. Ownership of the Public Square was contested by the city, county and state."). Whether the ownership of Republic Square has changed since 1948 in this instance appears to be a factual issue we cannot resolve in an attorney general opinion. *See generally* Tex. Att'y Gen. Op. Nos. GA-0128 (2003) at 5 (a question requiring resolution of particular facts is "not one in which this office ordinarily engages in the opinion process"); GA-0106 (2003) at 7 ("[t]his office cannot find facts or resolve fact questions in an attorney general opinion"). We suggest that you consult the General Land Office ("GLO"), which is required to review all state agency real property inventories and to keep an inventory of all real property owned by the state. *See* TEX. NAT. RES. CODE ANN. § 31.154 (Vernon Supp. 2004-05) (requiring the GLO asset management division to "keep inventory records of all real property owned by the state"); *see also id.* § 31.001(13) (defining "real property owned by the state" to mean "any interest in real property in the possession of the state or a state agency, including real property held in trust by a state agency").

Assuming that the state continues to own Republic Square, your second question is "whether any specific agency of the State owns or holds title to said property on behalf of the State and whether such agency is empowered to execute contracts to lease said property or otherwise manage said property. Or, in the alternative, is the management of said property a matter still wholly within the province of the Legislature?" Request Letter, *supra* note 1, at 1. Your question correctly assumes that the legislature may act to convey a state interest in Republic Square. It is well established that the disposition of state-owned land is generally a matter over which the legislature has exclusive control, but that the legislature may delegate this authority by statute. Thus, the power of a state agency or official to convey state property may be exercised only under the legislature's statutory authorization. *See Lorino v. Crawford Packing Co.*, 175 S.W.2d 410, 414 (Tex. 1943); *Conley v. Daughters of the Republic*, 156 S.W. 197, 200 (Tex. 1913) ("[The Legislature] may acquire property, real or personal, by conveyance, will, or otherwise, and hold or dispose of the same or apply it to any purpose, public or private, as it sees fit. The power of the state in respect to its property rights is vested in the Legislature[.]"). Moreover, the terms of any legislative authorization for the conveyance of land must be strictly complied with. *See State v. Easley*, 404 S.W.2d 296, 298-300 (Tex. 1966); *see also State ex rel. Dept. of Criminal Justice v. VitaPro Foods, Inc.*, 8 S.W.3d 316, 322 (Tex. 1999) ("In general, only persons authorized by the Constitution or a statute can make a contract binding on the State."). Consistent with this well established principle, you wish to know whether the state's interest in a street abutting Republic Square may be conveyed only by the legislature or whether some other state official or agency may do so. Thus, understanding that the authority to convey state land is generally the legislature's but is a power that the legislature may delegate, we must determine whether the legislature has enacted a statute authorizing any other state agency or official to convey a state interest in Republic Square.

Under the Government Code, the Texas Building and Procurement Commission (the "Commission") "has charge and control of all public buildings, grounds, and property." TEX. GOV'T

CODE ANN. § 2165.001(a) (Vernon Supp. 2004-05). Section 2165.151 provides that "[a]ll public grounds belonging to the state under the commission's charge and control may be leased for agricultural or commercial purposes." *Id.* § 2165.151 (Vernon 2000); *see also id.* § 2165.153 (requiring the Commission to advertise lease proposals). That provision does not authorize the Commission to lease state land for a federal courthouse. In addition, section 2166.052(b) of the Government Code generally limits the Commission's authority to "sell or otherwise dispose of real property of the state," but permits the Commission to do so in certain circumstances. *See id.* § 2166.052(b)(1)-(2) (providing that the Commission may sell or otherwise dispose of state real property with specific authority (i) "granted by the legislature if the legislature is in session" or (ii) "granted jointly by the [G]overnor and the Legislative Budget Board if the legislature is not in session"). However, because chapter 2166 of the Government Code "applies only to a building construction project of the state," *see id.* § 2166.002, section 2166.052 does not appear to apply here. Thus, the Commission, although it may have some authority to manage the property, does not appear to have the authority to convey an interest in state land in this situation.

Nor does the Commissioner of the GLO (the "Commissioner") appear to have independent authority to convey a state interest in Republic Square, which is not public school land. *See* Tex. Att'y Gen. Op. No. V-741 (1948) at 4 (concluding that Republic Square is not public school land). *See generally* TEX. NAT. RES. CODE ANN. ch. 51, subchs. B-E (Vernon 2001 & Supp. 2004-05) (providing for the sale and lease of public school land); § 51.291(a) (authorizing the Commissioner to "execute grants of easements for rights-of-way across, through, and under unsold public school land, the portion of the Gulf of Mexico within the jurisdiction of the state, the state-owned riverbeds and beds of navigable streams in the public domain, and all islands, saltwater lakes, bays, inlets, marshes, and reefs owned by the state within tidewater limits").

Chapter 31 of the Natural Resources Code requires the GLO asset management division, on a periodic basis, to review the state agency real property inventories to identify unused or substantially underused real property and prepare and provide to the Governor and other officials an evaluation report. *See id.* §§ 31.156-.157 (Vernon Supp. 2004-05). The Commissioner may recommend to the Governor land transactions with respect to land identified as unused or substantially underused. *See id.* § 31.1571.[4] Chapter 31 would authorize the conveyance of an interest in Republic Square to the United States only if (i) the asset management division identified the property as unused or substantially underused, and (ii) the Commissioner followed the chapter's detailed procedures, including formally recommending the transaction to the Governor.[5]

The Governor has even more direct authority in this regard, however. Your query involves the state's authority to convey an interest in state land to the federal government. Chapter 2204 of

---

[4]Under chapter 31, the term "real estate transaction" means "a sale, lease, trade, exchange, gift, grant, or other conveyance of a real property interest." TEX. NAT. RES. CODE ANN. § 31.001(12) (Vernon Supp. 2004-05).

[5]*See, e.g., id.* §§ 31.156 (real property review requirement), 31.157 (procedures for draft and final evaluation reports, including review by the Commission), 31.1571 (requirements for reports to the Governor recommending real property transactions). The Commissioner may not conduct a recommended transaction if the Governor gives the Commissioner written notice disapproving the recommendation. *See id.* § 31.1571(f).

the Government Code addresses the authority of the United States to acquire land in Texas. Section 2204.101 grants the legislature's consent "to the purchase or acquisition by the United States, including acquisition by condemnation, of land in this state." TEX. GOV'T CODE ANN. § 2204.101 (Vernon 2000). Section 2204.102(a) expressly authorizes the Governor to sell state land to the United States: "The governor may sell to the United States land owned by this state that the United States desires to acquire for a purpose specified by Section 2204.101." *Id.* § 2204.102(a). The purposes specified by section 2204.101 include a lighthouse, military facility, dockyard, customhouse, post office, or "other necessary public building," *id.* § 2204.101(b)(1), or a waterway, river, or harbor improvement, *see id.* § 2204.101(b)(2). Section 2204.102(b) indicates that section 2204.102(a) authorizes sales for a purchase price, providing that "[o]n payment of the purchase money for the land into the state treasury, the land commissioner, on the order of the governor, shall issue a patent for that land to the United States in the same manner that other patents are issued." *Id.* § 2204.102(b).

In a 1940 opinion, this office construed the statutory predecessor to section 2204.102 to authorize the Governor to grant an easement to the United States in land underlying navigable waters that was not public school land to construct a channel to a naval base "for its real value to be determined by the Governor." Tex. Att'y Gen. Op. No. O-2627 (1940) at 3. In the event the Governor and the United States' agent could not agree upon a purchase price, the opinion noted that the statutory predecessor to section 2204.101 authorized the federal government to acquire the interest in land by instituting condemnation proceedings. *See id.* This opinion indicates that the sale of an easement in land is sale of land for purposes of the statute. *See id.* at 1. By contrast, another 1940 attorney general opinion expressly concluded that the statutory predecessor to section 2204.102 did not authorize the Governor to lease land to the United States. *See* Tex. Att'y Gen. Op. No. O-2762 (1940) at 2-3.

Based on this authority, we conclude that section 2204.102 authorizes the Governor to sell state land or an easement in state land to the United States to construct a federal courthouse. *See* TEX. GOV'T CODE ANN. §§ 2204.101(b)(1) (Vernon 2000) (consent to the United States to acquire land for a necessary public building); 2204.102(a) (authorizing the Governor to sell state land to the United States for a purpose specified by section 2204.101); Tex. Att'y Gen. Op. No. O-2627 (1940) at 1 (concluding that the sale of an easement in land is a sale of land for purposes of the statutory predecessor to section 2204.102). Thus, in answer to your question, although the legislature may act to convey a state interest in Republic Square, a special legislative act is not necessary to convey Republic Square or an easement in the property to the United States for this purpose; the legislature has already delegated authority to enter into such a transaction to the Governor.

Your letter suggests that the United States does not seek to own Republic Square in fee simple but may wish to acquire an easement in an abutting street. Under section 2204.102, the Governor may sell an easement in Republic Square, including an easement in an abutting street to the street's center, to the United States to construct a federal courthouse.

You do not ask whether the City of Austin continues to have an interest in Republic Square under the 1917 legislation or about the City of Austin's authority to convey its interest in the land or the abutting street, and we do not address whether or how that interest might be conveyed.

Finally, we note that the GSA's ultimate goal is to vacate one of the streets abutting Republic Square. It may be necessary for the United States to acquire an interest in the street abutting Republic Square from the state, the land's owner, and the city, given its rights in the land under the 1917 legislation, in order to develop and use the property. But these transactions would not be sufficient to vacate the street; the public's easement in the street for street purposes must be relinquished. Texas law gives a home-rule municipality control over streets in the municipality, including the authority to vacate, abandon, or close a street without the abutting landowners' consent. *See* TEX. TRANSP. CODE ANN. §§ 311.001, .007 (Vernon 1999). *Compare id.* § 311.007, *with id.* § 311.008 (requiring a general-law municipality to vacate, abandon, or close a street only after receiving a petition from the abutting landowners). Furthermore, article III, section 56(a)(7) of the Texas Constitution prohibits the legislature from passing any local or special law "vacating roads, town plats, streets or alleys." TEX. CONST. art. III, § 56(a)(7). Thus, the City of Austin, a home-rule municipality,[6] is the appropriate Texas authority to act to vacate the street. Moreover, in exercising that authority, the City of Austin would act as the home-rule municipality with statutory jurisdiction over the street rather than as a party with an interest in the abutting property.[7]

---

[6]*See Quick v. City of Austin*, 7 S.W.3d 109, 122 (Tex. 1999) ("The City of Austin is a home-rule city deriving its power from article XI, section 5 of the Texas Constitution."); *see also* http://www.ci.austin.tx.us/law/ ("The City of Austin was originally Chartered in 1909 under a Legislative Act which the City later amended to assume home rule status.").

[7]The GSA may also wish to obtain the agreement of the State of Texas and the City of Austin not to contest the street closure. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.015 (Vernon 1997) ("An injunction may not be granted to stay or prevent the governing body of an incorporated city from vacating, abandoning, or closing a street or alley except on the suit of a person: (1) who is the owner or lessee of real property abutting the part of the street or alley vacated, abandoned, or closed; and (2) whose damages have neither been ascertained and paid in a condemnation suit by the city nor released.").

## S U M M A R Y

The disposition of state-owned land is a matter over which the legislature has exclusive control, and the power of a state agency or official to convey state property may be exercised only under the legislature's authorization. Assuming that the state continues to own Republic Square in the City of Austin, section 2204.102 of the Government Code authorizes the Governor to sell an easement in the property, including an easement in an abutting street to the street's center, to the United States to construct a federal courthouse. As a result, although the legislature may act to convey a state interest in Republic Square, a legislative act is not necessary to convey an easement in Republic Square to the United States. However, the City of Austin, a home-rule municipality with authority to vacate, abandon, or close city streets, is the appropriate Texas authority to vacate a street abutting Republic Square.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee